UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ROSE A. WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| *vs.* ) | CAUSE NO. 1:12-cv-613-DKL-WTL |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**ENTRY**

Rose A. Williams appeals the decision of the Commissioner of Social Security denying her application for disability benefits under the Social Security Act. For the reasons explained herein, the Commissioner's decision will be affirmed.

**Standards of review and disability**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress

has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for

determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four.

The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law

4

judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

Ms. Williams was born in 1968. She worked as a custodian for a newspaper company from 1992 to 2000. From 2000 to 2008, she worked as a certified nursing assistant. She claims to be disabled by back problems and depression. She received treatment for depression and anxiety at Gallahue Mental Health from April 22 to August 27, 2008. She had an MRI taken in June 2008 which revealed lumbar spinal ailments. She claimed in her application for disability benefits that she suffers from anxiety, arthritis, knee problems, and heart problems.

Ms. Williams applied for disability benefits in July 2008. During the course of initial review, the state agency's reviewing psychologist deemed her to have moderate difficulties in maintaining attention and concentration, persistence, or pace, (R. 570, 574), and to be

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (R. 575). On reconsideration review, a different state-agency psychologist affirmed the first's opinions.  (R. 173, 174.) A state-agency medical doctor determined that Ms. Williams had the physical RFC to perform light work but with a few postural limitations that are not at issue here.  (R. 603-10).

After the state agency denied her application on initial and reconsideration reviews, Ms. Williams asked for and received a hearing before an ALJ.  Ms. Williams was represented at the hearing by different counsel than represents her in this suit.  The ALJ denied her claim.  At step one, she found that Ms. Williams had not engaged in substantial gainful activity since her alleged onset date.  At step two, she found that Ms. Williams has the following severe impairments:  mild degenerative disc disease and depression.  The ALJ found that Ms. Williams's alleged fibromyalgia and headaches, while they are impairments, are not severe.  At step three, she found that Ms. Williams's impairments did not meet or medically equal any of the listing of impairments.  She considered listings 1.04 (disorders of the spine) and 12.04 (affective disorders).

The ALJ determined Ms. Williams's RFC for steps four and five.  She found that Ms. Williams had the RFC for light work with some additional restrictions:  never climbing ladders, ropes, or scaffolds; no more than occasional balancing, stooping, crouching,

kneeling, or climbing ramps or stairs; no more than occasional pushing or pulling with her bilateral lower extremities. She did not define any specific mental restrictions directly correlating with the state-agency psychologists' findings of moderate limitations in concentration, persistence, or pace. She found that, while Ms. Williams's impairments were reasonably expected to produce the type of symptoms that she alleged, her statements about those symptoms' persistence, degree, and extent were not entirely credible.

At step four, the ALJ found that Ms. Williams is unable to perform her past relevant work as a home health aide or cleaner. At step five, relying on the testimony of a vocational expert, the ALJ found that there exist a significant number of jobs in the national and Indiana economies that Ms. Williams is able to perform. Therefore, she found Ms. Williams not disabled.

Ms. Williams requested that the Commissioner's Appeals Council review the ALJ's decision and it agreed to do so. After its review of the record, and finding a new hearing unnecessary, the Appeals Council concurred with the ALJ's findings except that it concluded that the ALJ did not property assess Ms. Williams's mental impairment and, therefore, her RFC. The Council found that Ms. Williams is limited to understanding, remembering, and carrying out simple one- and two-step job instructions. (R. 5.) It found that the state-agency psychologists' opinions that Ms. Williams has the moderate limitations noted above (along with some mild limitations in other functional areas) is consistent with the medical evidence and gave it great weight. (R. 6.) However, the

7

Appeals Council found that, although the ALJ's RFC with restrictions and his hypothetical to the vocational expert did not include Ms. Williams's limitation to understanding, remembering, and carrying out simple one- and two-step job instructions, this additional mental limitation "does not further erode the occupational base for light, unskilled work" from that testified by the vocational expert at the hearing before the ALJ. (R. 6.) Therefore, the Appeals Council found that Ms. Williams is not disabled.

Ms. Williams brought this suit for judicial review of the Commissioner's decision. Because the Appeals Council reviewed the ALJ's decision and issued its own decision, it is the Appeals Council's decision that the Court reviews, together with the ALJ's decision to the extent that the Appeals Council adopted or affirmed it.

## Discussion

Ms. Williams raises one issue on review: whether substantial evidence supports the Commissioner's reliance on the numbers of jobs identified by the vocational expert that Ms. Williams can perform because she was not informed of Ms. Williams's moderate limitations in concentration, persistence, or pace. The vocational expert was not specifically informed about the limitation at the hearing, either by the ALJ's hypothetical or otherwise, and the Appeals Council did not conduct another hearing or otherwise obtain a supplemental report from a vocational expert based on the restriction, instead relying on the existing hearing testimony. Ms. Williams contends that failing to explicitly inform the vocational expert of the moderate mental limitation violates the rule of *O'Connor-Spinner*

*v. Astrue*, 627 F.3d 614 (7th Cir. 2010), and, thus, prevents the vocational expert's testimony from constituting substantial evidence in support of the Commissioner's decision that a significant number of jobs exist that she can perform.

*O'Connor-Spinner v. Astrue* holds that, as part of an ALJ's requirement to orient a vocational expert ("VE") to the totality of a claimant's limitations, the VE must be told of deficiencies of concentration, persistence, or pace, and that the most effective way to ensure that a VE is fully apprised is for the ALJ to include the deficiencies in his hypotheticals at the hearing.  *Id.* at 619.  The decision also declared that "[i]n most cases, . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace," *id.* at 620, because even simple and repetitive tasks might be difficult for a claimant with concentration, persistence, or pace deficiencies to perform.  *O'Connor-Spinner* does not require use of the specific terminology of concentration, persistence, or pace in all circumstances.  Two exceptions have been generally recognized in the case law.[2]  First, if the record reveals that the VE independently reviewed the medical evidence or heard the medical testimony that was directly relevant to the deficiencies, then the VE's familiarity with a claimant's limitations can be assumed despite gaps in the ALJ's hypotheticals.  *Id.* at 619.  However, if an ALJ poses a series of increasingly restrictive

---

[2] The Court of Appeals emphasized, as does this Court, that "[y]et, for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."  *O'Connor-Spinner*, 627 F.3d at 620-21.

9

hypotheticals to the VE, the assumption is that the VE's attention was focused on the hypotheticals and not other evidence in the record or testimony. The second exception is that, if the ALJ's alternate phrasing accurately excludes the functions that the claimant cannot perform due to his deficiencies, then the VE has been fully advised; in other words, when the ALJ's hypothetical excludes the triggers or causes of the claimant's deficiencies, then the deficiencies have been accommodated. The example that *O'Connor-Spinner* cited as the most frequent application of this exception is when a claimant's deficiencies in concentration, persistence, or pace are stress- or panic-related and the ALJ's hypothetical restricts the claimant to low-stress work. *Id.* at 620. A version of the second exception is when the ALJ includes in his hypothetical the functional limitations into which a medical expert has translated a claimant's deficiencies. *See Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).

The Commissioner does not contend that the first exception applies in this case. She does argue that the second exception applies and the Court agrees. Dr. Maura Clark, Ph.D., psychologist, opined on initial review that Ms. Williams had moderate difficulties in maintaining attention and concentration, persistence, or pace, (R. 570, 574), and was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (R. 575). Dr. William Shipley, Ph.D., psychologist, affirmed those opinions on reconsideration review. (R. 173, 174.) In

her narrative explanation of these opinions that she recorded on her Psychiatric Review Technique and Mental Residual Functional Capacity forms, (R. 560, 574), Dr. Clark wrote:

> However, in terms of level of severity of functioning [claimant's] allegations appear partially credible given [activities of daily living] appear [within normal limits] outside of physical concerns, attention and concentration are moderately impacted but appear reasonable for simple tasks, and [claimant] appears to be able to tolerate superficial, casual interactions with others.
>
> Claimant is able to understand, remember, and carry out instructions to the extent her physical condition permits.

(R. 576.) Dr. Clark thus translated her finding of a moderate limitation in concentration, persistence, or pace into a functional limitation to simple tasks and the mental ability to understand, remember, and carry out instructions.[3] As noted, Dr. Shipley affirmed those opinions after his own review of the evidence. Based on the state-agency psychologists' opinions, the Appeals Council found that the ALJ had not properly assessed Ms. Williams's mental impairment and determined that Ms. Williams's RFC is further restricted to understanding, remembering, and carrying out simple one- and two-step job instructions. (R. 5.) Ms. Williams has not shown that this formulation by the Appeals Council of her mental functional restriction fails to accommodate the state-agency psychologists' opinions that she is limited to simple tasks but is able to understand, remember, and carry out instructions.

The Appeals Council did not obtain additional vocational testimony regarding the

---

[3] Ms. Williams did not raise an issue regarding her mental ability to interact with co-workers or supervisors. At any rate, the same analysis applies.

number of jobs that Ms. Williams can perform based on its newly found RFC restriction because it determined that additional testimony was unnecessary:

> . . . the additional mental limitation does not further erode the occupational base for light, unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities to understand, carry out, and remember simple instructions. Accordingly, a limitation to understanding, remembering and carrying out simple one and two-step job instructions is consistent with the performance of remunerative unskilled work.

(R. 6.) The Appeals Council quoted the language of S.S.R. 85-15 when it wrote that the basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions. By regulation, unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Therefore, the Appeals Council's decision to rely on the VE's original testimony was not erroneous.

The VE at the hearing identified three jobs that Ms. Williams could perform, all of them constituting unskilled light jobs: (1) machine operator at 213,000 positions nationally and 9,000 in Indiana; (2) hand packager at 309,000 positions nationally and 7,000 in Indiana; and (3) assembler at 77,000 jobs nationally and 4,500 in Indiana. (R. 168.) Substantial evidence supports the Appeals Council's reliance on the VE's original hearing testimony for the number of jobs that Ms. Williams could perform with her moderate limitation in concentration, persistence, and pace. The ALJ found this number of jobs to be significant, the Appeals Council adopted that finding, and substantial evidence supports it.

The principle of *O'Connor-Spinner* was not violated by the ALJ or the Appeals Council because (1) the state-agency psychologists translated Ms. Williams's moderate limitation in concentration, persistence, or pace into a mental RFC restriction that was fairly stated by the Appeals Council as understanding, remembering, and carrying out simple one- and two-step job instructions; (2) the restriction satisfied the definition of unskilled work; and (3) the vocational expert testified to the existence of a significant number of light unskilled jobs that Ms. Williams can perform with that restriction. Substantial evidence thus supports the Commissioner's denial of Ms. Williams's claim for benefits and the denial is not invalid due to legal error.

## Conclusion

The decision of the Commissioner denying Ms. Williams's claim for disability benefits will be **AFFIRMED**.

**DONE this date:** 09/30/2013

*[signature]*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.